Walker, J.
Defendant SeKap S.A. Greek Cooperative Cigarette Manufacturing Company (hereafter “SeKap” or “defendant”) moves to dismiss the Commonwealth’s complaint pursuant to Mass.R.Civ.P. 12(b)(2) and 12(b)(6). The parties were before the court on November 20, 2003 for oral arguments. For the following reasons, defendant’s motion is allowed.

BACKGROUND

SeKap is a cigarette manufacturer located in Greece and organized under Greek law. The Commonwealth asserts that since June 29, 2000, approximately 2.6 million cigarettes manufactured by SeKap have been sold to consumers in Massachusetts. The Commonwealth argues that, because of its cigarette sales in Massachusetts, SeKap is subject to the requirements of Mass. Gen. Laws c. 94E and must contribute funds to a Commonwealth-monitored escrow account established as a result of settlements with cigarette manufacturers.
In November 1998, the Commonwealth (along with 45 other states) entered into a Master Settlement Agreement (“MSA”) with the leading United States tobacco manufacturers. The MSA was the result of well-publicized efforts of the attorneys general of the participating 46 states to require the leading cigarette manufacturers to provide funding for the public health costs associated with smoking. Each participating state adopted the MSA’s “model escrow statute,” which created an escrow account model for holding funds contributed by cigarette manufacturers who were not party to the MSA.[1] Massachusetts codified the statute at Mass. Gen. Laws c. 94E. That statute requires cigarette manufacturers that did not participate in the MSA to make annual payments to the escrow account based on the amount of their cigarettes sold in Massachusetts.[2]
SeKap was not a party to the MSA. As such, the Commonwealth asserts that its payment obligations are governed by Mass. Gen. Laws c. 94E, §2. Pursuant to that statute, the Commonwealth notified SeKap of its payment obligations six times since June 2000. SeKap has not contributed any funds to the escrow account.
SeKap maintains that it is not required to make payments to the account because it has no contact with Massachusetts. SeKap does not have any property, assets, offices, branches, employees, agents, or agents for service of process in Massachusetts. SeKap has never contracted with a Massachusetts entity and has never solicited or advertised any product in Massachusetts. SeKap further asserts that no SeKap officer, agent or director has ever been present in Massachusetts.’SeKap sold its cigarettes directly to a distributor organized under Greek law.[3] After selling its cigarettes to the Greek distributor, SeKap had no further involvement in the distribution and sales of its cigarettes. There is no evidence that SeKap had any ownership interest in, or control over, the Greek distributor, or that it had any control over the marketing, price or sales of its cigarettes once it completed the sale with the Greek distributor. SeKap’s cigarettes apparently entered the Massachusetts market through a distribution process that began with the Greek distributor and ended with the cigarettes being purchased by a domestic distributor with a warehouse in Millbury, Massachusetts.
SeKap now argues that because it has no contacts with Massachusetts, the Commonwealth cannot assert jurisdiction over SeKap or require it to make escrow account payments. As such, SeKap moves to dismiss the Commonwealth’s complaint for lack of jurisdiction pursuant to Mass.RCiv.P. 12(b)(2) and 12(b)(6), and pursuant to the Massachusetts longarm statute, Mass. Gen. Laws c. 223A §3.

DISCUSSION

Massachusetts courts addressing the Commonwealth’s personal jurisdiction over an out-of-state defendant make a two-part inquiry to determine (1) if the assertion of jurisdiction is governed by a Massachusetts statute, and (2) whether assertion of such jurisdiction is “consistent with basic due process requirements mandated by the United States Constitution.” Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1989). Thus, a court cannot find jurisdiction “which is constitutionally unacceptable, even though the fact pattern asserted in support of jurisdiction apparently satisfies the statute’s literal requirements ...” Heins v. Wilhelm Loh Wetzlar Optical Machinery, 26 Mass.App.Ct. 14, 16 (1988), rev. den., 402 Mass. 1105 (1998). The plaintiff has the burden of establishing the facts upon which the juris *28 ¿fictional issue is to be determined. Droukas v. Divers Training Academy, Inc, 375 Mass. 149, 151 (1978).

The Massachusetts Longarm Statute

Mass. Gen. Laws c. 223A, §3(a) provides jurisdiction over foreign companies “transacting any business in this commonwealth.” That clause is to be construed broadly by courts, and must be decided on the particular facts of each case. Good Hope Industries, 378 Mass, at 6-7; Droukas, 375 Mass, at 157. The Commonwealth’s only allegation that SeKap transacted business in the Commonwealth is the fact that 2.6 million of SeKap’s cigarettes eventually were purchased by Massachusetts consumers. There are no other allegations of any other contacts with the Commonwealth, and there are no allegations that SeKap “purposefully avail[ed] itself of the privilege of conducting activities within the [Commonwealth], thus invoking the benefits and protections of its laws. Droukas, 375 Mass, at 153, quoting Hanson v. Decida, 357 U.S. 235, 253 (1958).
Indeed, the facts demonstrate that once SeKap sold its cigarettes to the Greek distributor, it had no control over, or interest in, the destination of the cigarettes. There is no evidence demonstrating even a single affirmative, purposeful act by SeKap to avail itself of the privileges of conducting business in Massachusetts. While the cigarettes eventually ended up in the Massachusetts warehouse of a domestic cigarette distributor, they may have changed hands several times between other distributors; there is no evidence that the Greek distributor sold the cigarettes directly to the Massachusetts distributor. Regardless, even if the Greek distributor sold the cigarettes directly to the Massachusetts distributor, such a transaction, without more, is not evidence that SeKap purposefully availed itself of the privilege of conducting business in Massachusetts. The cases the Commonwealth cites as authority are distinguishable on the facts from this case. See Boston Super Tools, Inc. v. RW Tech, Inc., 467 F.Sup. 558, 561-62 (D.Mass. 1979) (jurisdiction over defendant was proper where it entered a distributorship agreement with the Massachusetts plaintiff, sold products to plaintiff specifically for sale in Massachusetts and maintained frequent contact regarding sales with plaintiff); Droukas v. Divers Training Academy, Inc., 375 Mass, at 153 (no jurisdiction was found where Florida corporation’s contacts with Massachusetts consisted only of an advertisement in a publication distributed in Massachusetts, reception of a phone call from a Massachusetts consumer, and shipment of correspondence and goods to Massachusetts).
In short, SeKap was too far removed from the transaction that ultimately brought its cigarettes to Massachusetts to be considered to have transacted any business in the Commonwealth. The Commonwealth has not established that jurisdiction of SeKap is authorized by Mass. Gen. Laws c. 223A §3(a).
Alternatively, the Commonwealth suggests that it may maintain jurisdiction over SeKap under c. 223k §3(d), which states that a court may exercise personal jurisdiction over a party that “cause[s] tortious injury in this commonwealth by an act or omission outside the commonwealth if he . . . derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.” The Commonwealth argues that the 2.6 million cigarettes sold in Massachusetts provided substantial revenue for SeKap. The Commonwealth’s argument is not persuasive.
As an initial matter, the Commonwealth has provided no authority for the proposition that SeKap’s refusal to make payments under c. 94E constitutes a tort. The Commonwealth claims that failure to make those payments constitute a tort because the escrow account was created in anticipation of liability for tortious smoking-related injuries. However, there is no evidence that any of SeKap’s cigarettes have actually caused any injury in Massachusetts, and the Commonwealth provides no authority or detailed analysis regarding failure to make payments under c. 94E as tortious activity. The substantial revenue argument similarly lacks persuasiveness because SeKap did not derive revenue from sales of its cigarettes in Massachusetts; it derived revenue from sales to the Greek distributor. There is no evidence that SeKap obtains any revenue based on the amount of units sold in Massachusetts; thus, the only entities obtaining revenue in Massachusetts from sales of SeKap cigarettes are the Massachusetts distributor, and the distributor that sold the cigarettes to the Massachusetts distributor. SeKap has no control over, or interest in, those entities, and received no revenue from their Massachusetts sales efforts.
Jurisdiction would be proper over the Massachusetts distributor and the distributor who sold the cigarettes to the Massachusetts distributor. Under c. 94E, §1 (b), a “first purchaser for resale in the United States” is considered a “tobacco product manufacturer” for purposes of c. 94E. However, as the Commonwealth acknowledges in its opposition memorandum, since the escrow statutes were adopted, the Federal Trade Commission (FTC) has “rendered the ‘first purchaser’ provision obsolete.” Thus, the Commonwealth only enforces the escrow statute against manufacturers.
While the Commonwealth’s reach may be somewhat limited by the FTC’s directive, that is an insufficient reason to find jurisdiction under c. 94E where a foreign manufacturer’s contacts with the Commonwealth do not satisfy the longarm statute or constitutional due process. While the court acknowledges the importance of c. 94E for public health reasons, those reasons cannot provide the basis for jurisdiction where a manufacturer’s contacts with Massachusetts are so tenuous as to preclude jurisdiction under the longarm statute.
*29 The fact that some of SeKap’s cigarettes were ultimately consumed in Massachusetts is not by itself sufficient to establish jurisdiction over SeKap where SeKap did not do anything to purposefully avail itself of Massachusetts sales and revenues. Because this court finds that jurisdiction is not applicable under the longarm statute, there is no need to address the constitutional due process issues.

ORDER

For the foregoing reasons, defendant’s motion to dismiss is ALLOWED.

The payments required of manufacturers who were parties to the MSA are governed by the terms of the MSA.

Massachusetts monitors the sales of all cigarette brands through a process of providing sellers with excise stamps that they must affix to each pack of cigarettes intended for sale in Massachusetts.

In its reply brief to the Commonwealth’s opposition memorandum, SeKap asserts that the distributor was organized under the laws of Cyprus. Whether the company was organized under the laws of Greece or Cyprus is not determinative of this court’s decision.